Wicholson, C. J.,
delivered the opinion of the Court.
The first question to be decided in this cause is, whether the decree pronounced on the 10th of Sept., 1868, was a final decree, or was it an interlocutory decree. After stating the facts, which appeared to the Chancellor to be conclusive of the case, the decree proceeds: “His Honor is therefore pleased to order, adjudge and decree, that the said Alexander Mathis and E. *536 Smith Mathis, executors of Alexander Mathis, deceased, recover of the said Wm. Meek and R>obt. Simpson, and their security, James T. Shields, the balance of the purchase price of said mills, with interest at six per cent, per annum, until paid; and because it does not appear what sum is still due the complainants in the cross bill, his Honor is further pleased to order, adjudge and decree, that the Master will take an account upon the foot of the notes filed and marked as filed on the 29th of May, 1860, and what balance is due to the complainants in the cross bill, allowing all just credits, and make his report to the next term. And his Honor orders, adjudges and decrees, that the complainants in the original bill, and the defendants in the cross bill, pay all the costs of this cause. And it is further ordered, adjudged and decreed, that the attaching creditors-of the said Presnell be perpetually enjoined, and that they pay the costs of their attachment and garnishment,”
, In the case of Delap v. Hunter, 1 Sneed, 101, the Court say: “A decree is final when all the facts and circumstances material and necessary to a complete explanation of -matters in litigation are brought before the Court, and so fully and clearly ascertained on both sides that the Court is enabled, upon a full consideration of the case made out, finally to determine between them according to equity and good conscience.” Barb. Ch. Pr., 330; 8 Wend., 224. “A decree which disposes of the whole merits of the cause, leaving nothing for the future judgment of the Court in the case. which will make it necessary to bring it again before the Court for final decision, is a final decree.” 8 Paige, 18.
*537 Commenting on the case of Jaques v. The M. E. Church, 17 Johns., 558, in which. Judge Spencer said, that “no case can be found in which a decree directing a reference to a Master, or a feigned issue, for the purpose of ascertaining any material fact in the cause, has been held to be a final decree,” this Court, in Delap v. Hunter, said: “We will not say that a decree may not be final, although it directs a reference to the Master. It may be so when it contains all the consequential directions that may depend on the result of the report, where no further decree of the Court will be necessary in the case.”
Upon these authorities, we are constrained to hold, that the decree of September 10th, 1868, was final. All the facts and circumstances material and necessary to a complete explanation of the matter in litigation, were before the Court; and upon these facts and circumstances, the rights of the parties were determined. The costs of the case were disposed of, and nothing left but to ascertain the exact amount of the balance due to complainants in the cross bill, which was merely a matter of clerical calculation. The ascertainment of this balance by the Master rendered no other decree necessary, except the final judgment awarding execution. As soon as it was ascertained and confirmed- by the Court, it became the amount for which a decree had' already been made. The decree was, therefore, final, and could not be examined by the Chancellor at a subsequent term, and cannot be examined here, as it was not appealed from, and is not here by writ of error.
The next question is as to the correctness of the de *538 cree rendered at a subsequent term, on the 5th of March, 1869. In this decree complainants in the cross bill are turned over to the mills for the enforcement of their lien and for the satisfaction of their debt. This is in effect, a reversal and abrogation of the decree of September 10th, 1868, made at a former term.
In the view that the last named decree was final, the decree of March 5th, 1869, was erroneous. The only-power that was left to the Chancellor was. to pass upon the report of the Clerk and Master. Upon the confirmation of the report the decree of September 10th, 1868, was in a condition to be'. fully executed by the awarding of an execution. The decree of March 5th, 1869, will be reversed, and the cause remanded.
On a motion for writ of error and petition to rehear, Nicholson, C. J., delivered the following opinion of the Court:
At a former day of the term it was held by the Court that the decree made by the Chancellor at the September Term, 1868, settled the rights of the parties, and that at the subsequent term, in March, 1869, when the report of the Clerk and Master on the account ordered, was made, it was not competent for the Chancellor to Reverse his decree made at the previous term; that he could do no more than confirm the report of the Clerk and Master, and award execution according to the the decree of the September Term, 1868.
It was also held by this Court, that, as the cause was in this Court by appeal from the decree of March, *539 1869, by the complainants in the cross bill only, and as the defendants to the cross bill had taken no appeal or writ of error, the decree of September Term, 1869, was not before us for examination as to errors in that decree.
The defendants in the cross bill who are the complainants in the original bill, now move for a writ of error to bring before us the decree of September Term, 1868, to the end that said decree may be re-examined upon its merits, and if there is error in it, that the same may be corrected.
The writ of error lies to this Court from the Chancery Court within two years after 'the judgment or decree. If the time is to be computed from the decree of September Term, 1868, the application is too late, and the motion must be disallowed. But if the time is to be computed from the decree at the March Term, 1869, the motion is in time, and must be allowed as a matter of right.
By the Code, 3176, a writ of error lies from the final judgment of the Chancery Court to the Supreme Court, in all cases where an appeal in the nature of a writ of error would have lain.
By section 3172, an appeal in the nature of a writ of error lies at the instance of either party, from the judgment or decree of the Court of Chancery, upon the same terms and subject to the same regulations, as an appeal from similar judgments or decrees.
By section 3155, either party, dissatisfied with the judgment or decree of the Chancery Court, may appeal to the Supreme Court, and have a re-examination in that Court of the whole matter of law and fact, appearing in the record.
*540 By section 3157, the Chancellor may, in his discretion, allow an appeal from his decree, determining the principles involved, and ordering an account, or a sale, or partition, before the account is taken, or the sale or partition is made.
It is clearly deducible from these several provisions of the Code, that the appeal, or appeal in error, or writ of error, cannot be demanded as a matter of right, until the final judgment or decree is rendered; but, in the discretion of the Chancellor, an appeal or appeal in error, may be allowed after a judgment or decree, which is final, so far as settling the rights of the parties is concerned, but before there is a final judgment or decree upon an account, sale or partition, ordered. In the case before us, at the Sept. Term, 1868, when 'the rights of the parties were finally settled, and an account ordered to be made to the next term, the parties had no right to demand an appeal or appeal in error, from that decree. An application for such appeal or appeal in error, might or might not have been allowed, in the discretion of the Chancellor.† But at the March Term, 1869, when the final judgment on the report of the Clerk and Master on the account, was made, both parties then had, for the first time, the right to an appeal, or an appeal in error, and both parties had two years from that final' judgment within which to have the whole case brought to the Supreme Court by writ of error. We therefore think the motion for' writ of error must be granted -as a matter of right.
*541 Upon, examination of the decree of September, 1868, it appears that judgment is rendered in favor of A. Mathis and E.' S. Mathis, executors, against "William Meek and Robert Simpson and their security, James T’ Shields, for the balance of .tke purchase price of the mills in controversy, with interest at six per cent, until paid. It appears that Shields was the security of Wrilliam Meek and Robert Simpson, complainants in the original bill, on a bond executed upon the granting of the injunction, enjoining ’Wayne and Stubblefield from prosecuting certain garnishments against them; but no injunction was prayed for or obtained against A. Mathis and E. S. Mathis, who were also defendants to said original bill. It appears, also, that the injunction was made perpetual against the garnishment of Wayne and Stubblefield, whereby the liability of Shields on the injunction bond was discharged; yet a decree was rendered against him as well as against Meek and Simpson, in favor of A. Mathis and E. S. .Mathis. ’ This was clearly erroneous, and is so conceded to be by the counsel of complainants in the cross bill.
It appears that in the progress of the original suit, defendants A. Mathis and E. S. Mathis, as executors of Alexander Mathis, the original defendant, filed their . cross bill, making Meek and Simpson, the complainants in the original bill, defendants. They make the answer of Alexander Mathis to the original bill part of their cross bill, in which it is alleged that said Alexander Mathis had a mortgage on _ the mills, for a balance of the purchase money of $500, due from Elias Presnell, to whom the mills were sold; that complainants Meek *542 and Simpson purchased the mills from Presnell, with knowledge that Alexander Mathis had a lien upon them, and prays that they be decreed to pay to them, as executors, the balance due from Presnell on the mills, and that an account be ordered to ascertain the balance. It appears that Meek and Simpson failed to answer the cross bill, and that it was taken for confessed. It was upon the effect of this pro confesso order that the Chancellor proceeded in rendering the decree at the September Term, 1868. Taking the several allegations of the cross bill to be true, as he had a right to do upon the pro confesso order, we cannot say that the decree against Meek and Simpson was erroneous. The true relief to which complainants in the cross bill were entitled was, to have the mills sold for the enforcement of their lien; but they sought to hold Meek and Simpson responsible for the balance of the purchase money, and if the mills were of value sufficient to satisfy this balance at the time they came into the possession of Meek and Simpson, we are not prepared to say that there was error in holding them directly responsible for the balance due on the mills. At all events, their failure to defend the cross bill authorized the Chancellor to proceed upon the assumption that they were so liable, and to decree accordingly. Whilst we see much imperfection in the record, and are on that account embarrassed in arriving at the real merits and equity of the case, yet we are satisfied that substantial justice will be done by reversing so much of the decree of September 10, 1868, as gives a decree against James T. Shields, and by affirming so much as holds Meek and Simpson responsi- *543 •Me for the balance of the purchase money due for the mills, and as orders an account to ascertain the amount of that balance.
We have already determined in the opinion heretofore given, that the decree at the March Term, 1869, was erroneous. We therefore, reverse that decree, and remand the cause, that the decree of September, 1868, as herein modified, may be executed.
The complainants, Meek and Simpson, will pay all the costs in this Court and in the Court below, except the costs arising from the garnishment cases of Wayne and Stubblefield, which 'will be paid by them.

 See Abbott v. Fogg, post —; Harrison V. Farnsworth, post —.